UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CAROLINA CASUALTY INSURANCE
COMPANY,

        Plaintiff,

   v.

ROBERT S. FORBES PC, ROBERT S FORBES,
EARNEST BATES and JESSICA BATES,

        Defendants.

Case No. 16-cv-40-JPG-SCW

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Carolina Casualty Insurance Company's ("Carolina Casualty") motion for summary judgment (Doc. 23). Defendants Robert S. Forbes PC and Robert S. Forbes have responded to the motion (Doc. 28), and defendants Earnest Bates and Jessica Bates have adopted that response (Doc. 29). Carolina Casualty has replied to that response (Doc. 30).

**I.    Summary Judgment**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

**II.    Facts**

The material facts in this case are essentially undisputed.

A.     Application for Policy

In the period of April-May 2014[1], Forbes applied to Carolina Casualty for lawyers professional liability insurance. He requested that the insurance policy be issued to the firm of "Robert S. Forbes, P.C., Attorney At Law." Forbes was the only attorney practicing law at Forbes PC.

In the application, Forbes represented that neither the applicant firm nor any lawyer in the firm was "aware of any fact, circumstance or situation that might reasonably be expected to result in any professional liability claim or suit" against the firm or any lawyer in the firm. Carolina Casualty Incorporated Proposal Form 1, ¶ 1 (Doc. 1-1 at 2, 7). He also represented that no attorney in the firm was aware of "an actual or alleged act, omission, circumstance, or breach of duty that a reasonable attorney would recognize might reasonably be expected to result in a claim" against the firm or any lawyer in the firm. CNA Application for Lawyers Professional Liability Insurance 4, ¶ 35(b) (Doc. 1-2 at 5).

In reality, Forbes was aware at the time that the Illinois Appellate Court for the Fifth District had rendered a decision in October 2013 in the workers' compensation case of Earnest Bates, who was represented by Forbes, adverse to Bates. *Winchester v. Illinois Workers' Comp. Comm'n*, 2013 IL App. (5th) 120421WC-U, 2013 WL 5594469, at *1 (Ill. App. Ct. Oct. 9, 2013). The reason for the adverse decision was that Forbes had failed to timely file a document necessary to give the circuit court jurisdiction to hear the appeal of an adverse decision by the Illinois Workers' Compensation Commission in favor of Bates's employer. *Id*. at *4. As a result, the Commission's decision adverse to Bates was allowed to stand. *Id*.

Forbes also represented in the application for professional liability insurance that no

---

[1] Forbes submitted an incomplete form in April and supplemented it with the missing parts in May.

attorney in the firm had "been subject to any disciplinary inquiry, complaint or proceeding for any reason other than non-payment of dues" within the five years preceding the application. CNA Application for Lawyers Professional Liability Insurance 4, ¶ 36(a) (Doc. 1-2 at 5).

In reality, Forbes was in the middle of proceedings in front of the Illinois Attorney Registration and Disciplinary Commission ("ARDC") stemming from allegations of professional misconduct beginning in 2006. The ARDC began its investigation in or around June 2012. Shortly before submitting his completed application for lawyers professional liability insurance from Carolina Casualty, Forbes had provided a written, sworn statement to the ARDC (February 20, 2014) and testified before the ARDC Inquiry Board (May 1, 2014) concerning the alleged misconduct. The ARDC proceeding was ultimately resolved by Forbes's November 2014 removal from the roll of attorneys authorized to practice law in Illinois. *See, generally, In re: Robert Scott Forbes*, No. M.R. 26897 (Ill. 2014) (Doc. 1-5 at 2-5; Doc. 1-4).

In the application for insurance, Forbes represented that his statements in the application were true and made after due diligence and that he was aware Carolina Casualty would rely on the truth of his statements in issuing insurance. Carolina Casualty Incorporated Proposal Form 2 (Doc. 1-1 at 3, 8); CNA Application for Lawyers Professional Liability Insurance 5 (Doc. 1-2 at 6).

In May 2014, in reliance on the application completed by Forbes, Carolina Casualty's insurance underwriter issued a Carolina Casualty lawyers professional liability insurance policy number 1301292 ("Policy") naming "Robert S. Forbes, P.C., Attorney At Law" as the named insured. Policy 1 (Doc. 1-3 at 4) The Policy covered May 13, 2014, to May 13, 2015. If the underwriter had known of the circumstances surrounding the final denial of Bates's workers' compensation claim or the circumstances giving rise to Forbes's ARDC proceedings, she would

not have issued the Policy or would have required a higher premium.

    B.    <u>Bates Dispute</u>

Bates and his wife retained counsel in connection with Forbes's handling of Bates's workers' compensation case. On October 1, 2014, that counsel sent Forbes a letter recounting why he believed Bates had committed malpractice and fraud in connection with his representation of Bates and demanding payment to settle the dispute.

In a letter dated January 20, 2015, counsel for Carolina Casualty informed Forbes that his dispute with Bates was not covered by the Policy because the conduct alleged occurred, or was related to conduct that occurred, before the Policy coverage dates. The letter also reminded Forbes that the Policy could be subject to rescission if Forbes knew about Bates's potential claim before Carolina Casualty issued the Policy and failed to disclose it, and it reserved Carolina Casualty's right to seek rescission in the future (Doc. 26-2 at 2-4).

In April 2015, Bates and his wife filed a lawsuit in state court against Forbes in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois: *Bates v. Forbes*, No. 2015-L-000524. Carolina Casualty's counsel received a copy of the *Bates* complaint on May 19, 2015. This was the first time Carolina Casualty's underwriter became aware of Forbes's alleged misconduct in connection with his representation of Bates.

On June 15, 2015, Carolina Casualty's counsel again informed Forbes by letter that no coverage was available for Forbes's dispute with Bates because of the timing of the conduct alleged and reserved the right to seek rescission at a later time (Doc. 26-3 at 2-4).

Carolina Casualty's underwriter did not learn of Forbes's ARDC proceedings until Carolina Casualty's counsel told her about them in late November 2015.

    C.    <u>This Litigation</u>

Carolina Casualty filed this lawsuit in January 2016 seeking a declaration that the Policy did not cover the defense or indemnity of the *Bates* lawsuit (Counts I and II) or, in the alternative, rescission of the Policy (Counts III and IV). It pleads its willingness to return the premiums paid for the Policy upon entry of judgment of rescission. In its summary judgment motion, Carolina Casualty seeks first rescission based on Forbes's failure to disclose his potential malpractice in connection with representing Bates and his ARDC proceedings. Alternatively, it seeks a declaration of non-coverage based on the Policy terms.

Forbes does not contest the facts as set forth in Carolina Casualty's summary judgment motion. Instead, he raises the legal arguments that Carolina Casualty cannot rescind the Policy because it has been in effect for a year (the policy term), because Forbes's misrepresentations were not material as a matter of law, and because Carolina Casualty waived any right it had to rescind. It further argues the Policy, by its terms, provides coverage for the *Bates* action.

**III.**    **Analysis**

The Court need only address the issue of rescission, which is sufficient to resolve this case. All parties agree Illinois law applies in this diversity action. Under Illinois law, "'rescission' is the cancelling of a contract so as to restore the parties to their initial status." *Horan v. Blowitz*, 148 N.E.2d 445, 449 (1958). Rescission is "an equitable doctrine, and a party seeking rescission must restore the other party to the status quo existing at the time the contract was made." *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 713 (Ill. App. Ct. 2004) (internal quotations omitted).

Generally under Illinois law, an insurance policy can be rescinded where the insurer can

show there is a misrepresentation in the written application for the insurance policy and the misrepresentation "materially affects either the acceptance of the risk or the hazard assumed" by the insurer. 215 ILCS 5/154; *Illinois State Bar Ass'n Mut. Ins. Co. v. Law Office of Tuzzolino & Terpinas*, 27 N.E.3d 67, 71 (Ill. 2015); *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003). This general rule does not apply, however, for certain automobile insurance policies, 215 ILCS 5/143.13(a), certain fire insurance policies, 215 ILCS 5/143.13(b), and "all other policies of personal lines," 215 ILCS 5/143.13(c). 215 ILCS 5/154. Those policies cannot be revoked based on material misrepresentation if they have been in effect for the shorter of one year or one policy term. 215 ILCS 5/154.

      A.    <u>One-Year/One-Term Limitation</u>

Forbes first argues that 215 ILCS 5/154 does not permit rescission because the Policy falls into the category of "all other policies of personal lines" that cannot be rescinded after a year or a policy term has passed. However, Illinois law defines "policies of personal lines" as a policy "*issued to a natural person* for personal or family protection," 215 ILCS 5/143.13(c) (emphasis added), and the Policy in this case was clearly *issued to a corporation* – "Robert S. Forbes, P.C., Attorney At Law" – although it covered Forbes as an insured. "P.C." is an abbreviation for "professional corporation," which is defined under Illinois law as "*a corporation* organized under this Act solely for the purpose of rendering one category of professional service or related professional services. . . ." 805 ILCS 10/3.4(a). A P.C. is most definitely not a natural person. Thus, because the Policy was not issued to a natural person, the one-year/one-term limitation on rescission does not apply, and the Policy may be rescinded if Forbes made material misrepresentations in the application.

6

B.      Misrepresentation

No party really disputes that Forbes made misrepresentations in the application for lawyers professional liability insurance. He stated in writing that he was not aware of facts that would lead a reasonable person to believe might lead to a legal malpractice claim, but Forbes clearly knew from reading the Illinois Appellate Court opinion issued only a few months before that Bates had lost his workers' compensation case because Forbes had failed to file a document on time. Such circumstances would clearly lead a reasonable person to believe Forbes could be subject to a malpractice claim because of this failure. In addition, Forbes stated in writing that he had not been involved in any disciplinary inquiry or proceeding in the preceding five years when, in fact, he was in the midst of an active ARDC investigation and had responded in writing and as a live witness only a short time before completing the application. These two written statements clearly qualify as misrepresentations for the purposes of 215 ILCS 5/154.

C.      Materiality

Forbes argues that the misrepresentations he made were not material as a matter of law. He notes that Carolina Casualty has not provided evidence that Carolina Casualty would have rejected the application and not written a policy had Forbes been honest in the application. Instead, he notes that the underwriter said *either* a policy would not have been issued *or* one would have been issued with a higher premium. In Forbes's view, without undisputed evidence that a policy would not have been written, Carolina Casualty has not shown Forbes's misrepresentations were material. *See Much v. Penn-Am. Ins. Co.*, No. 99 C 7258, 2002 WL 226867, at *4 (N.D. Ill. Feb. 14, 2002) (misrepresentation is material if it would have caused the rejection of the application) (citing *Methodist Med. Ctr. of Ill. v. American Med. Sec., Inc.*, 38 F.3d 316, 320 (7th

Cir. 1994)).

"To determine materiality, Illinois courts use an objective test that asks whether a 'reasonably careful and intelligent' underwriter 'would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application.'" *Essex Ins. Co. v. Galilee Med. Ctr. S.C.*, 815 F.3d 319, 324 (7th Cir. 2016) (citing *Small v. Prudential Life Ins. Co.,* 617 N.E.2d 80, 83 (Ill. App. Ct. 1993)). The Seventh Circuit Court of Appeals held in *Galilee Medical Center*, however, that it is too limiting to read this standard to require that an application would have been entirely rejected had the applicant answered questions truthfully. *Galilee Med. Ctr.*, 815 F.3d at 324. Instead, it hewed to the standard set forth in 215 ILCS 5/154: whether the misrepresentation "affects either the acceptance of the risk or the hazard assumed" by the insurer. *Id.* Thus, a misrepresentation is material if it would have increased the premium paid for the insurance because the risk would have been greater than that actually anticipated by the insurer.

Here, it is clear that a reasonably careful and intelligent underwriter would regard the real facts about Forbes's representation of Bates and his ARDC proceedings to substantially increase the chances of a malpractice claim so as to cause Carolina Casualty not to issue the policy on the terms it did. Forbes's misrepresentations made it significantly more likely Carolina Casualty would erroneously assess the hazard of issuing malpractice insurance, and the undisputed evidence shows that, had it known the truth, it would have either refused to issue him a policy or issued him a policy with an increased premium. Specifically with respect to the Bates information, Forbes's failure to disclose meant it was significantly more likely that Bates would sue him – and Carolina Casualty could be on the hook for the claim – than Forbes represented to Carolina Casualty in the

application. Indeed, Bates's suit is what prompted this litigation. With respect to the ARDC proceedings, Forbes's five-year history of disciplinary action sheds light on his recent integrity and abilities as an attorney and therefore the likelihood that he would commit malpractice while covered by the Policy, which certainly affected the hazard assumed by Carolina Casualty in writing the Policy. This is consistent with Forbes's acknowledgements in the application that his responses were material to the issuance and terms of any policy issued. In sum, no reasonable jury could find Forbes's misrepresentations were not material.

D. <u>Waiver</u>

Finally, Forbes argues that Carolina Casualty has waived its right to seek rescission by waiting too long to demand it. He notes that Bates's attorney informed Forbes of the Bates's dispute with Forbes on or around October 1, 2014, and Carolina Casualty's counsel responded to that letter on January 20, 2015, yet Carolina Casualty did not seek rescission until it filed this lawsuit nearly a year later on January 13, 2016. Forbes also argues that Carolina Casualty was on notice when it learned of the Bates dispute that it should have investigated Forbes's disciplinary history with the ARDC. He further notes that there is no evidence of when Carolina Casualty first learned of Bates's ARDC proceeding.

"Waiver is defined as the voluntary relinquishment of a known right." *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 717 (Ill. App. Ct. 2004) (internal quotations omitted). A party seeking to rescind a contact must seek to do so promptly after learning of the basis for the rescission, otherwise the right to rescind can be waived. *Id.* However, conduct inconsistent with waiver during the delay can prevent it. For example, in *Coregis*, the Court found no waiver even though the insurer waited more than a year after learning

of a material misrepresentation in a lawyers professional liability insurance policy renewal application before seeking rescission. *Id.* It reasoned that the insurance company did nothing in the interim that would reasonably have led anyone to believe it was waiving its right to rescind the policy. *Id.*

This case is similar to *Coregis* in that, while Carolina Casualty waited more than a year after learning of the Bates dispute to seek rescission of the Policy, it did nothing that would reasonably have led anyone to believe it was waiving its right to do so. On the contrary, the January 20, 2015, and June 15, 2015, letters from Carolina Casualty's counsel both expressly reserved Carolina Casualty's right to rescind the Policy if it concluded that Forbes had made material misrepresentations on the application. In such circumstances, it was not unreasonable to wait a year to seek rescission while its counsel investigated the Bates matter and discovered the ARDC proceedings. This evidence shows Carolina Casualty did not voluntarily relinquish its right to rescission by delay.

*Mollihan v. Stephany*, 340 N.E.2d 627 (Ill. App. Ct. 1975) does not convince the Court to hold otherwise. In that case, there was a dispute of fact whether an insured who had made a misrepresentation on his written auto insurance application had disclosed the truth orally when submitting the application with the misrepresentation. *Id.* at 629. Following the application, the insurer acted as if the policy were not void, paying an automobile damage claim by the insured resulting from an accident and telling the insured he was covered for the damages of the other party in the accident. *Id.* Only when the other party sought to have the insurer pay for his damages did the insurer seek rescission. The Illinois Appellate Court found an issue of fact existed because there was conflicting evidence whether the insurer knew of the misrepresentation

at the time it paid the insured's claim and told the insured he was covered, and therefore how long it waited after learning of the misrepresentation before seeking rescission. *Id.* at 629-30. The case at bar is distinguishable from *Mollihan* because here there is no conflicting evidence regarding when Carolina Casualty first learned of a misrepresentation and, more importantly, no conduct of Carolina Casualty after learning of any misrepresentation that could be seen as affirming the voidable insurance contract.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES AS MOOT in part** Carolina Casualty's summary judgment motion (Doc. 23). The motion is **GRANTED** to the extent it seeks judgment on Counts III and IV; the motion is **DENIED AS MOOT** to the extent it seeks judgment on Counts I and II. To effect the rescission, the Court **DIRECTS** that Carolina Casualty shall have up to and including February 3, 2017, to tender to Forbes the premiums he paid to place him in his pre-Policy status and to file notice of such tender with the Court. When notice of tender is filed, the Court will enter final judgment of rescission in this case.

**IT IS SO ORDERED.**
**DATED: January 10, 2017**

                                                    s/ J. Phil Gilbert
                                                    **J. PHIL GILBERT**
                                                    **DISTRICT JUDGE**